UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:20-CR-7-HAB |
| ) | |
| STEVEN J. HECKE, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Defendant Steven J. Hecke (Hecke) and his co-defendant are facing gun and drug charges as set forth in a nine-count Indictment. (ECF No. 26). This matter comes before the Court on Hecke's Motions to Suppress Evidence (ECF Nos. 66, 68), filed on April 20, 2021, and May 7, 2021, and the later request for a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978) (ECF No. 71), filed on May 11, 2021. The parties have submitted extensive briefing (ECF Nos. 75, 84, 91, 92), making the matter ripe for review. Having reviewed the parties' filings, the Court determines that no *Franks* hearing is warranted and the Motions to Suppress based on the lack of probable cause supporting the state search warrant affidavits will be DENIED as MOOT.

## DISCUSSION

Search warrant affidavits are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, a search warrant is invalid if police officers obtain it by deliberately or recklessly providing the issuing court with false, material information. *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). In *Franks*, the Supreme Court defined the procedure, evidentiary burdens, and proper remedies associated with a defendant's attack on the truthfulness of statements made in an affidavit supporting the issuance of a search warrant. To obtain a *Franks* hearing, the

defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. *McMurtrey*, 704 F.3d at 508. "These elements are hard to prove, and thus *Franks* hearings are rarely held" because a defendant seeking a *Franks* hearing "bears a substantial burden to demonstrate probable falsity." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (citations omitted).

Although the issues presented to the Court are framed in the context of *Franks*, it is necessary to further refine the parties' dispute. This case involves multiple state and federal warrants, only two of which are challenged by the present set of motions. The initial state warrants, seeking to place a GPS device on a Ford F150 truck registered to Hecke and the other requesting cell phone records for the telephone number 260-409-9567, were issued on November 12, 2019. These warrants, according to Hecke, violated the Fourth Amendment because Detective Compton, the affiant, omitted material information about a confidential informant's criminal history, his current legal troubles, and his reliability. Hecke catalogues in detail much of what the affidavits omit and argues that under Seventh Circuit precedent "credibility omissions themselves, even in the absence of more direct evidence of the officer's state of mind, provide sufficient circumstantial evidence to support a reasonable and thus permissible inference of reckless disregard for the truth." *United States v. Glover*, 755 F.3d 811 (7th Cir. 2014); *United States v. Clark*, 935 F.3d 558 (7th Cir. 2019) (inference that the omissions were deliberate or reckless permissible where affiant omitted all adverse information he had about the credibility of the informant).

After obtaining the state warrants, the Government sought federal warrants for: Hecke's residence on Spring Street in Fort Wayne, Indiana; two storage units; a separate house allegedly used as a stash house on Andrews Street in Fort Wayne, Indiana; Hecke's truck; and his cellular

telephone. *See* 1:20-MJ-3 through and including 1:20-MJ-8. These warrants, all issued on January 13, 2020, authorized officers to search and locate evidence of drug trafficking. The affidavits used to obtain each of these warrants rely, in significant part, on the GPS tracking information and cell phone records obtained through the state warrants. (ECF No. 94, Ex. H). The affidavits also rely on information obtained from the same confidential informant catalogued in the affidavits for the state warrants and, in addition, they detail controlled buys by the confidential informant from the Defendant on November 13, 2019, and December 5, 2019. Upon execution of the federal search warrants at the various locations, agents found large quantities of drugs, drug trafficking paraphernalia, and guns.

As noted above, Hecke has challenged only the issuance of the original state warrants and argues that if those warrants are invalidated, the exclusionary rule applies to bar all tracking or surveillance evidence as well as all evidence later obtained using the tracking and surveillance knowledge. *See Wong Sun v. United States,* 371 U.S. 471 (1963). As the Defendant's argument goes, without details obtained from the state search warrants, probable cause did not exist to obtain the federal search warrants–warrants that yielded the mother-load of evidence against him. Thus, Hecke focuses first on the state search warrants and seeks a *Franks* hearing to attack the affidavits that yielded these initial probable cause findings by the state court Magistrate. The Defendant has yet to move to suppress or challenge the basis for the federal warrants.

For this reason, the Government asserts that Hecke is attacking the wrong set of warrants and the true dispute revolves around the evidence obtained from the federal warrants. In addressing the *Franks* motion, the Government acknowledges that Detective Compton's affidavit "could have been more clear" (ECF No. 75 at 16), but asserts that despite the lack of clarity Hecke fails to make the requisite showing of *mens rea* to warrant a *Franks* hearing. Further, even if Hecke made the

required showing, the Government represents it does not intend to use at trial any of the evidence obtained from the state warrants, thereby mooting any challenge to that evidence. Finally, the Government argues that the later-acquired federal warrants contain a separate probable cause determination independent of any illegally obtained evidence from the state warrants. Thus, in the Government's view, the alleged omissions by Detective Compton regarding the confidential informant in the state affidavits are not material–not to the issuance of either the state or federal warrants.

      The Court agrees with the Government's analysis in part. Given the Government's agreement to not use the evidence at trial, there is no practical difference between denying Defendant's motions as moot or granting both motions to suppress. *See United States v. Quintana*, No. 15 CR 552-1, 2016 WL 6277435, at *1 (N.D. Ill. Oct. 27, 2016) (denying as moot defendant's motion to suppress with respect to the search of his residence, given the government's representation that it does not intend to introduce any evidence from the search); *United States v. Armstead*, No. CR11-0143, 2011 WL 6204598, at *2 (N.D. Iowa Dec. 13, 2011) ("As a practical matter, it is unclear whether there is a significant difference between granting the motion to suppress or denying the motion as moot (based on the Government's promise not to offer the evidence during its case in chief)."); *United States v. Shaky*, No. 09-299, 2010 WL 4625511, at *1 n.1 (W.D. Pa. Nov. 4, 2010) (denying motion as moot as allegedly suppressible statements would not be used at trial); *United States v. Tomkins*, No. 07 CR 227, 2009 WL 590237, at *4 (N.D. Ill. Mar. 6, 2009) (government's representation that it does not intend to rely on any cameras, photo memory sticks, or packets of photographs seized at defendant's house, or to introduce any evidence seized from defendant's tool chests moots the motion to suppress evidence). Indeed, under either alternative, the Government, given its concession, will not be

4

offering evidence obtained from the cell phone records or the GPS tracking device into evidence at trial. Thus, there is little value to be derived from, or need for, a judicial finding on the matter. *See United States v. Aleman*, 548 F.3d 1158, 1167 (8th Cir. 2008) (declining to review denial of motion to suppress defendant's statements, explaining that the "challenge is moot because the government did not use any part of his statement at the trial."). Accordingly, the Motions to Suppress the state warrants and the request for a *Franks* hearing are DENIED as MOOT.

The absence of the GPS tracking evidence and the cell phone evidence at trial removes one layer of Hecke's argument. But this does not end the analysis. The exclusion of the GPS tracking and cell phone evidence by the Government's agreement accomplishes only one of Defendant's goals here. Indeed, Hecke acknowledges that his purpose in attacking the initial warrants is to use that finding (assuming it was favorable to him) as a gateway to argue that, under the Fourth Amendment, derivative evidence (i.e., the evidence obtained through the federal warrants) must be suppressed as "fruit of the poisonous tree." *Wong Sun*, 371 U.S. at 488. (ECF No. 92 at 2). But the Defendant's argument is not a foregone conclusion. Under the "fruit of the poisonous tree" doctrine, not all evidence *needs* suppressed "simply because it would not have come to light but for the illegal actions of the police." *Wong Sun*, 371 U.S. at 488. The government may use evidence that it has obtained from a source independent of the primary illegality. *Id.* Thus, courts should ask if "intervening events or circumstances independent of the primary illegality may have so attenuated the causal connection as to dissipate the taint of the unlawful police action" *United States v. Timmann*, 741 F.3d 1170, 1182 (11th Cir. 2013); *Wong Sun,* 371 U.S. at 488.

Here, even if a "primary illegality" occurred with respect to the state court warrants, as Hecke asserts, the existence of subsequent federal warrants founded on other evidence of criminal

5

conduct, such as evidence obtained from controlled buys, complicates matters.[1] The new warrants were supported by a separate and independent finding of probable cause by a neutral and detached federal magistrate judge, which has not been attacked by Hecke in any motion before the Court. The existence of the later-acquired warrants may be an intervening and independent event that could purge the taint of any prior unlawful conduct Hecke asserts regarding the state warrants. *See United States v. Bell,* 925 F.3d 362 (7th Cir. 2019) (assuming without deciding that a primary illegality occurred and applying the "independent source" doctrine to uphold a later-acquired warrant supported by evidence independent of the primary illegality alleged).[2]

---

[1] For present purposes, the Court accepts the Defendant's argument that the omissions in the affidavits for state search warrants regarding the confidential informant's criminal history, his recent arrest, and the minimal corroboration of the CI's veracity would meet the threshold for a *Franks* hearing and further warrant suppression.

[2] *Bell's* analysis may ultimately be instructive here. In that case, Bell was helping another individual, Turner, sell stolen firearms in exchange for a portion of the profit. Turner ran into his own legal troubles and cooperated with law enforcement against Bell by providing details of one of the sales and conducting several controlled transactions with Bell. Bell was eventually arrested and, at the time of his arrest, the arresting officer opened Bell's flip phone and viewed a photograph of a firearm on the home screen in what the Seventh Circuit found "was likely an unconstitutional search." 925 F.3d at 367. Approximately a week later, the agent sought a warrant for Bell's phone. The supporting affidavit recounted that Turner had shown the agent a photo of an AK-47 that Bell had sent him via text message. The affidavit also stated that an officer had seen a photo of an AK-47 on the home screen of Bell's cellphone subsequent to his arrest. A federal district judge granted the warrant. Later, the agent sought a second warrant to extract electronically stored data from Bell's cellphone. That search yielded data showing that the photo had been sent from Bell's cellphone and the date of that transmission.

Bell moved to suppress the evidence obtained from his cellphone. He argued that the arresting officer unconstitutionally searched his flip phone by opening it to view the home screen. Without the information from this search, Bell asserted, both warrants lacked probable cause. Further, Bell argued that the photo obtained pursuant to the first warrant was impermissibly used as support for the second.

In analyzing the issue, the Seventh Circuit assumed the existence of a primary illegality, i.e., that the search of the phone at the time of arrest was unconstitutional. It went on, however, to uphold the subsequent warrants in spite of the primary illegality and permit the photo evidence obtained from Bell's cell phone and the electronic evidence tied to it under the "independent source" doctrine:

> Although the first search warrant affidavit included the tainted information, under the independent source doctrine, when a search warrant is obtained, in part, with tainted information, we ask two questions. First, would the warrant have been issued even without considering the tainted information? And, second, was the officer's decision to seek the warrant prompted by the illegal search? *United States v. Etchin*, 614 F.3d 726, 737 (7th Cir. 2010); *see also United States v. Scott*, 731 F.3d 659, 664 (7th Cir. 2013).

But the Court has been presented with neither a motion to suppress the federal warrants nor briefing on the issues that would flow from such a motion and complete the adversarial process. Defendant has opted instead to make the arguments in piecemeal fashion which does not permit the Court, at present, to analyze the very argument the Court believes Hecke intends to make. At most, the Court has before it the Government's bare assertion that the affidavits for federal search warrant provide "ample evidence" for an independent finding of probable cause. (ECF No. 75 at 25: "Even ignoring the vehicle tracking from November through December 10…other investigative measures furnished ample information for probable cause.") and the Defendant's assertions that it is premature to discuss the federal warrants without a ruling on the state search warrants. Add to this mix, the Government's concession to not use evidence obtained via the state warrants and the Court cannot further advance the Defendant's intended argument.

The Court is mindful of the Seventh Circuit's instruction that district judges should not venture into the role of advocate by conducting a party's research, crafting arguments on a party's behalf, or *sua sponte* deciding issues without the benefit of adversarial presentation. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008) (when a "[district] judge [acts] *sua sponte*, the parties [are] unable to provide their views and supply legal authorities."). Here, because the Court has not been presented with a motion to suppress the federal warrants and the Government has agreed to forgo use of evidence obtained from the state warrants at trial, the most the Court can do is conclude that the Defendant's motions related to the state court warrants (ECF Nos. 66, 68, 71) are DENIED as MOOT. The Court acknowledges that this

---

*Bell*, 925 F.3d at 370.

is not the most satisfying resolution; however, the manner in which this case has unfolded requires such a result presently.

## CONCLUSION

Based on the above, the Defendant's Motions to Suppress (ECF Nos. 66, 68) and his Motion for a *Franks* Hearing (ECF No. 71) are DENIED as MOOT.

SO ORDERED on August 9, 2021.

                                       s/ Holly A. Brady
                                       JUDGE HOLLY A. BRADY
                                       UNITED STATES DISTRICT COURT